UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

BRIAN A. MAUS,

        Petitioner,

        v.                               Case No.  14-C-1393

BRIAN FOSTER,

        Respondent.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING
CERTIFICATE OF APPEALABILITY, AND DISMISSING CASE

On the morning of January 3, 2005, Gerri Bennetts woke after being hit on the right side of her head by a blunt object.  As she turned and discovered the barrel of a gun, Bennetts realized there were three people in her room.  Although one of the men had wrapped his face in Ace bandages, Bennetts recognized the voice of Brian Maus -- a man she had known for eleven or twelve years.  The three men left after removing three safes, Bennett's Glamour Shots portfolio, and other property.  Afterward, Bennetts called the 911 dispatcher to identify Maus, and to provide the license plate number and a description of the getaway car.  Following the issuance of charges and representation by no fewer than seven attorneys[1], Maus insisted on representing himself at trial.[2]  Maus pled no-contest to a felony bail jumping charge, but proceeded to verdict on charges of armed burglary with a dangerous weapon and armed robbery with threat of force, both as party to a crime.  The jury found him guilty on both counts, and the trial court sentenced Maus to thirteen years

_____

[1]At the July 1, 2009, hearing, Attorney Cadwell moved to withdraw noting that she was the ninth attorney.

[2]Outside the presence of the jury, the court informed Maus that he did a "good job trying this case."  The court thought Maus was prepared, his arguments were cogent and his defense was appropriate, and that he was prepared to proceed.  (Doc. 54-9 at 182.)

initial confinement and thirteen years of extended supervision, to be served consecutive to any existing sentence. The Wisconsin Court of Appeals granted appellate counsel's motion to withdraw "based on Maus's disorderly, disruptive and disrespectful behavior and his grievance filed with the Office of Lawyer Regulation" but gave Maus an extension to file a post-conviction motion. That 85-page post-conviction motion with 15 exhibits was denied. Maus appealed, presenting eighteen separate claims for relief. The Wisconsin Court of Appeals affirmed, and the Wisconsin Supreme Court denied his petition for review in a September 24, 2014, order. *State v. Maus*, 2014 WI App 90, *cert. denied*, 855 N.W.2d 696 (Sept. 24, 2014).

The pending petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

2

A claim is considered to be procedurally defaulted and not subject to habeas review when the state court denies a petitioner's claim based on an independent and adequate state law ground. A state law ground is independent when the court relied on the procedural bar as an independent basis for its disposition of the case. *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010)(citing *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010)). Further, the state law ground is adequate when it has been proclaimed prior to the court's ruling and regularly followed by the state's courts. *Id.,* 627 F.3d at 592. When a state court decides a claim on an independent and adequate state law ground, it does not reach federal law. *Szabo v. Walls*, 313 F.3d 392, 395-96 (7th Cir. 2002).

There are limited circumstances in which a federal court will proceed with habeas review notwithstanding a procedural default. *Lee v. Kemna*, 534 U.S. 362, 363, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002). Specifically, a procedural default may be overlooked when the petitioner demonstrates cause for the default and prejudice based on that default or when the petitioner establishes that the denial of relief will result in a miscarriage of justice. *Wainwright v. Sykes*, 433 U.S. 72, 86-87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); *Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986), *superseded on other grounds by statute*, Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 (1996).

Maus's petition set forth 21 separate grounds for relief; however, this court dismissed his claim that the trial court "forced counsel on him when he wanted none" because the record revealed he represented himself at trial. After respondent pointed out that three of the claims were not exhausted in the state courts, Maus sought leave to file a petition omitting the three claims. These claims included (1) Maus was forced to

represent himself, (2) his rights were violated because he did not have a probable cause hearing within 15 days of his arrest, and (3) Maus was denied his right to attack a witness's credibility "about being mentally retarded." (Doc. 22.) Accordingly, the court turns to the remaining claims in the amended petition. (Doc. 22-1.)

Initially, Maus alleges that appellate counsel (Karen Missimer) was ineffective in failing to raise "all the meritial [sic] issues Maus point[ed] out on appeal," and that trial counsel (Alexander Brown, Robert Rusch, Shawn Mutter, John Bachman, and Barbara Cadwell) were ineffective in "refusing to make proper arguments or objections to protect Maus and his civil rights." (Doc. 22-1.) According to Maus, Missimer moved to withdraw without filing a no-merit report or a post-conviction motion thereby forcing him to represent himself. He further contends that every one of the attorneys "criminally and civilly conspired with the District Attorney Ralph Uttke, judges, Langlade County police, state witnesses and others to cover up the criminal misconduct that took place in Langlade County." (Doc. 22-1.)

Attached to his brief, Maus includes motions to withdraw that were filed by counsel during his criminal proceedings. Each of the attorneys cited Maus's insistence on filing his own motions without their knowledge or consent, and his refusal to hear their advice. Attorney Bachman stated that Maus was "utterly impervious to advice from any attorney," Attorney Mutter stated Maus refused to even listen to his advice, and Attorney Bachman stated that Maus "was unable to rationally discuss anything with him" instead directing a "stream of vile profanities at him." Attorney Cadwell refused to file Maus's motions on the grounds that such motions were frivolous and such behavior unethical. Indeed, Attorney

4

Mutter could not "ethically" represent Maus who was pursuing an objective that Mutter considered to be "repugnant and imprudent." (Doc. 27-2, Exs. B-E.)

Further, during a April 13, 2006, hearing in Langlade County Circuit Court, Maus unequivocally stated his intention to proceed pro se:

> Mr. Maus: I represent myself. I filed that motion on September 28, saying that I represent myself. And this court has abused its discretion and did everything that they could trying to put a counsel onto me. I didn't ask this court or the State or one of the State's crooks to represent me. I represent myself. I filed my own motion September 28th. And I am representing myself. I don't want none of the State's crooks. All they are – they steal money and lie ....

(Doc. 16-13.) The Wisconsin Court of Appeals granted Attorney Missimer's motion to withdraw as appellate counsel based on Maus's "disorderly, disruptive, and disrespectful behavior and his grievance filed with the Office of Lawyer Regulation." (Doc. 16-4.) In her motion, Missimer requested that the Court of Appeals dismiss the no-merit appeal without prejudice and set the time for Maus to file a pro se post-conviction motion or notice of appeal. Maus moved to have Missimer disbarred and accused his counsel of conspiring with others to cover up criminal misconduct. The Court of Appeals noted that Maus "was previously warned by the circuit court that his conduct could result in forfeiture of his right to counsel." Consequently, the Court of Appeals refused to order the State Defender to appoint replacement counsel and granted Maus an additional sixty days to file a pro se post-conviction motion or notice of appeal. (Doc. 16-4.)

During the June 20, 2013, post-conviction motion hearing, Langlade Count Circuit Judge Leon D. Stenz addressed Maus's argument that appellate counsel was allowed to

withdraw before filing a no-merit brief. In rejecting Maus's argument, Judge Stenz explained:

> I do know from my handling of the case that Mrs. Messimer [sic] has been here twice requesting to withdrawal [sic] from representation.
>
> I also know this, in the case in chief M. Maus has had approximately at least seven attorneys, I believe. All of them have sought to withdrawal [sic], I believe, so, apparently, Mr. Maus is difficult to work with.
>
> When he was here before the court for in the case in chief, I advised him as to the advantage and disadvantages of having an attorney and warned him of potential of forfeiture of counsel. When we discussed the issue of Mrs. Messimer's [sic] request to withdrawal [sic], we had two different hearing[s] on that. I again advised Mr. Maus of the benefit of attorneys and disadvantage of representing himself and warned him of potential of forfeiture of counsel, and I explained to him the authority of appellate counsel.
>
> He expressed to the court an understanding and agreement that he would allow her to perform her duties. And despite those warnings and despite his knowledge of potential for forfeiture he refused, apparently to cooperate with the attorney and attempted from my review, attempted to manipulate the attorney and frustrated the attorney's ability to proceed.
>
> I believe that frustration had to be knowingly and intentionally because he had to be advised so many times. I agree that I don't know the basis for the Court of Appeals allowance of Mrs. Messimer [sic] to withdrawal. [sic]. I can't speak to that issue. All I can say is that Mr. Maus was warned on number of occasions that he had to cooperate.

(Doc. 20-8 at 7-8.)

On appeal from the order denying post-conviction relief, the Wisconsin Court of Appeals ruled that Missimer properly refused to pursue all claims because she had an ethical duty *not* to pursue meritless claims. *Maus*, 2014 WI App 90, ¶ 8 (citing *State ex rel. Flores v. State*, 183 Wis. 2d 587, 621, 516 N.W. 2d 362 (1994)). The Court of Appeals determined that any ineffective assistance claim was moot because "Maus was able to personally raise his claims after his no-merit appeal was dismissed and his case remanded for him to file a post-conviction motion." *Id.* Finally, there was no basis for the accusation

that Missimer illegally withdrew from representation inasmuch as she successfully moved to withdraw based on Maus's inappropriate behavior. *Id.*

With respect to the allegations that all five trial attorneys were ineffective, the Wisconsin Court of Appeals ruled that the ineffective assistance of trial counsel claims were moot because Maus had the opportunity to raise all of the claims "once he was allowed to proceed pro se." *Id.*, 2014 WI App 90, ¶ 9. The only claims that Maus could not later raise were (1) that the complaint stated lies, and (2) that there was no probable cause because it was not raised before the preliminary hearing. However, counsel was not ineffective in this respect because any such claims would have been rejected. *Id.*

Respondent argues that the court's ruling that the ineffective assistance of counsel claims were moot provides an adequate state law ground for the decision independent of the federal question. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). If the state court denied the claim on state laws, the claim is subject to procedural default. Maus responds that he didn't default any of the issues because he never had appellate counsel appeal his conviction, and to hold him to a default on this issue would be a miscarriage of justice. However, this argument fails because the Court of Appeals found that appellate counsel had an ethical duty not to pursue claims she felt were meritless and she did not "illegally withdraw." 2014 WI App 90, ¶ 8. Her withdrawal was based on Maus's inappropriate behavior. Hence, there can be no finding of deficient performance on this record.

As for trial counsel, the Court of Appeals similarly emphasized that counsel was not ineffective for failing to file motions they deemed frivolous, and they "correctly" determined Maus's claims lacked merit. Because this court finds no evidence of deficient performance and the state court's rulings were neither contrary to nor an unreasonable application of

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), Maus's claims for ineffective assistance of counsel must be denied.

Next, Maus asserts that officers lacked probable cause or a warrant to make a traffic stop and arrest him in Marathon County one hour after the robbery. However, the Circuit Court heard testimony from the arresting officers during the May 25, 2006, hearing. Officer Michael Murray testified that he was on duty early morning on January 3, 2005, when he heard a dispatch for an alert to be on the look out for a white Buick. (Doc. 17 at 19-22.) Murray was informed that the vehicle was involved in an armed robbery at a residence. He observed the vehicle "about a half mile east of Marathon County line at Highway Double H" when he was eastbound and the vehicle was westbound. He turned to follow the vehicle and stopped it about "a mile west of Highway Double H or where the Marathon County Line is." (Doc. 17 at 22.) He testified that he stopped the vehicle based on the report and his understanding that it may have been involved in the armed robbery at a residence. (*Id.*) Deputy Ben Baker was also working that morning and received the same information from Langlade County dispatch. He reported that the information was received from Bennetts, who called dispatch to report that she had been robbed. (Doc. 17 at 37.) Bennetts identified the car, and wrote down a license plate number (either VBN 641 or VBN 671). (Doc. 17 at 48.) Bennetts further reported that she recognized the voice of Maus because she had gone to school with him and she never got along with him. (Doc. 17 at 47.)

On appeal, Maus argued that he "was illegally arrested in Marathon county by Deputy Murray without any probable cause, arrest warrant, and outside Murray's jurisdiction violation of Maus's 4th, 5th and 14th Amendments." (Doc. 16-5 at 23.) Maus

argued, without evidence, that the dispatcher lied about the license plate number and then destroyed all recordings to coverup that the dispatcher was the one who provided the license plate number to officers rather than Bennetts. The only proof offered by Maus was a letter addressed to Margaret Maus from Sheriff Bill Greening dated September 12, 2011. (Doc. 27-2, Ex. H.) The letter stated that the Sheriff has no record or copy of the 911 recording system manual from 2005 and no record showing whether or not the 911 system was working properly in January of 2005. In addition to citing the Fourth Amendment, Maus argued Seventh Circuit case law regarding the Constitutional requirements for a stop. (Doc. 16-5 at 24.)

The Wisconsin Court of Appeals found that the "circuit court properly determined that, when the deputy spotted a vehicle with plate number VBN-671 matching the color and make of the getaway vehicle one hour after the robbery, he had probable cause to stop and arrest Maus. Further the Langlade County Deputy's arrest was a proper 'fresh pursuit' arrest." 2014 WI App 90, ¶ 12. Once the deputy spotted the vehicle, he immediately pursued it and completed the stop one-half mile into Marathon County. *Id.*

Pursuant to *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976), a federal habeas court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *Id.*; *see also Wright v. West*, 505 U.S. 277, 293, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992). Because it is clear that Maus informed the state court of the factual basis for his claim, argued that the facts establish a violation of the Fourth Amendment and that the state court analyzed the facts and properly applied the law, this Fourth Amendment claim is not cognizable in federal habeas review. See *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2003). Further, to the

extent that Maus contends that the officer had no authority under state law to make the arrest in another county, such assertion is not a cognizable federal claim.

Grounds four through ten allege misconduct by Langlade County officials. Specifically, Maus asserts that:

FOUR: The Langlade County officers conspired to plant evidence.

FIVE: The District Attorney lied about the 911 system "crashing" so he would not have to provide Maus with the tape to prove that Bennetts never identified him.

SIX: The District Attorney solicited perjur[ed] testimony out of Bennetts, Murray, Baker, Keith Swoboda and Anna Osborne. He had Bennetts claim she recognized Maus's voice during the robbery.

SEVEN: The District Attorney and Deputy Lenzer solicited a false statement out of Scott Mackenzie by coaching, threatening, and make promises to him.

EIGHT: The Langlade County Sheriff's Department failed to arrange an identification line-up between Maus and Mackenzie to see if he could identify Maus in a line-up.

NINE: There was no voice identification done between Maus and Bennetts to see if she could identify Maus.

TEN: Judge Stenz was "bias and impartial and threatened to hold Maus in contempt of court if he disclosed to the jury Bennetts was a drug dealer."

In his brief supporting the petition, Maus argues that he raised each of these arguments properly and that the state waived the issues. However, he presents no evidence and cites to nothing in the record to support any of these claims.

The Wisconsin Court of Appeals dismissed the allegations of "multiple instances of misconduct by Langlade County officials, including the judge and the prosecutor,"

because they were either "unsupported or belied by the record." 2014 WI App 90, ¶ 20. Additionally, the Court of Appeals found that Maus's arguments did not merit individual attention and were rejected as undeveloped. *Id.* The Wisconsin Rules of Appellate Procedure require that an appellant provide a statement of facts relevant to the issues presented for review with appropriate references to the record. Wis. Stat. § 809.19(1)(3). To the extent that the state court rejected Maus's claims as unsupported or underdeveloped, this is an adequate and independent state ground for its decision resulting in the procedural default of these claims which cannot be overcome. See *Kerr v. Thurmer*, 639 F.3d 315, 323 (7th Cir. 2011), *vacated on other grounds*, 132 S. Ct. 1791 (2012)(holding that a "party's failure adequately to develop an argument has consistently been a reason to reject claims advanced by litigants in the Wisconsin state courts). That a state court could have reached the claims and chose not to do so "makes no difference in the adequate-and-independent ground analysis." *Id.* The bottom line is that there is nothing in this record to suggest that these arguments warrant habeas relief.

Count nine was rejected by the Wisconsin Court of Appeals because Maus offered no authority for the proposition that law enforcement was required to administer a voice lin-up. 2014 WI App 90, ¶ 14 (citing *State v. Flynn*, 190 Wis. 2d 31, 39, n.2 (Ct. App. 1994)). Further, the voice line-up was unnecessary where the victim recognized Maus's voice at the time of the crime. *Id.* Similarly, count ten was rejected by the Wisconsin Court of Appeals because the "trial court was a model of patience, restraint and fairness with Maus, who repeatedly made baseless accusations of official misconduct against the judge and prosecutor and was prone to profanity-laden outbursts in court." *Id.*, 2014 WI App 90,

¶ 20.   Moreover, this court is unaware of any clearly established Federal law, as determined by the Supreme Court, or any evidence in the record that would otherwise support Maus's claims.

Count eleven accuses Deputy Baker of preparing a false report that Maus gave an oral statement about his involvement in the robbery.  The record shows that the trial court conducted a hearing on May 25, 2006, regarding Fourth and Fifth Amendment issues raised by Maus.  With respect to Maus's oral statement, Baker testified that he was at the Langlade County Jail on January 6, 2005,  as a deputy with the Langlade County Sheriff Department.  (Doc. 17 at 5.)  Maus had been brought in on January 3, 2005, and given a *Miranda* warning by Mike Murray with Baker present.  (Doc. 17 at 8.)  Baker had contact with Maus on the 6th for fingerprinting.  (Doc. 17 at 8.)  Baker did not ask Maus any questions; however, Maus initiated a conversation and made voluntary statements  in the booking area of the jail while he was being fingerprinted.  (Doc. 17 at 9-10.)  Maus asked Baker if he was being charged and stated why he felt he had been arrested illegally. (Doc. 17 at 10.)

At trial, Baker was not called in the case in chief.  Prior to Baker being called as a rebuttal witness, Judge Stenz explained to Maus that it had been determined earlier in the case that it was not an interrogation but rather a brief exchange in which Maus "basically volunteered the statements." (Doc. 54-8 at 29.)  Statements made in response to further questions by Baker were suppressed.  (*Id.*)  Moreover, the district attorney indicated that he would not use any of the suppressed portion, and would introduce the voluntary statement by Maus on rebuttal whereby Maus said "Doing you a favor.  I was just there. I didn't do nothing.  I just watched.  I don't go for the violence stuff."  (Doc. 54-8 at 29.)

12

The Wisconsin Court of Appeals rejected the claim as inadequately developed, and, as such, established an independent and adequate state ground for its decision as discussed above. The court agrees that the record shows that the issue was not properly developed or argued on appeal. Furthermore, the Wisconsin Court of Appeals added that it agreed with the trial court and the State's analysis, citing the State's review of the record. 2014 WI App 90, ¶13. The State's review included the following:

> Examining the record, it appears that Maus made inculpatory statements to Officer Baker while in custody after having invoked his right to counsel three days earlier (179:8-17; 247: St. Ex. 4, 317:11-14). Maus volunteered these statements not while being interrogated, but as he was having his mug shot and fingerprints taken. (179:8-17; 247: St. Ex. 4; 317:25-29). Among Maus's statements was "I did you guys a favor" by committing the crime, and "you guys let it go right under your nose (247: St. Ex. 4, 317:12). The officer then asked, "You talking cocaine?" (*id.*). Before trial, Judge Kennedy ruled that Maus's statements prior to the officer's question about cocaine were admissible, and Judge Stenz agreed with Judge Kennedy's analysis, and allowed these statements to be used during the State's rebuttal in response to alibi testimony presented by the defense (179:8-17; 317:11-37).

> The trial court properly allowed the evidence on rebuttal. First the statements were not the product of an interrogation, but were volunteered, and therefore Maus's invocation of his *Miranda* right to counsel three days earlier would not bar admission of these statements. *See State v. Banks*, 2010 WI App 107, ¶¶ 33, 35, 328 Wis. 2d 766, 790 N.W.2d 526. Second, even if the court had erred in determining that no *Miranda* violation occurred, such evidence may be offered on rebuttal, as it was in this case, in response to the defense's alibi testimony. *See State v. Mendoza*, 96 Wis. 2d 106, 118-19, 291 N.W.2d 478 (1980).

> Finally any error in admitting this evidence on rebuttal would have been harmless because no rational jury would have reached a different outcome absent this evidence. *See State v. Harvey*, 2002 WI 93, ¶ 46, 254 Wis. 2d 442, 647 N.W.2d 189.

On this record, the court is unable to conclude that the Court of Appeals' decision to adopt this reasoning was contrary to or an unreasonable application of clearly established Federal law or otherwise based on an unreasonable determination of the facts.

Ground twelve of the petition charges that the complaint "didn't state any probable cause, but a bunch of lies." According to Maus, excising the lies leaves a complaint with no probable cause.

The Wisconsin Court of Appeals commented that the accuracy of the allegations against Maus were a matter for the jury, and rejected this argument as inadequately developed. By citing *State v. Flynn*, 190 Wis. 2d 31, 39, n.2 (Ct. App. 1994)[3], the Wisconsin Court of Appeals provided an independent and adequate state ground for his decision, and Maus has not shown cause or prejudice for his default beyond his failed ineffective assistance of counsel claims.

In ground thirteen, Maus maintains that the state courts denied him his right to a speedy trial. During the post-conviction hearing on June 20, 2013, Judge Stenz addressed Maus's speedy trial motion. (Doc. 20-8 at 20.) He explained that there are statutory requirements and Constitutional requirements. (Doc. 20-8 at 20-21.) Acknowledging that a delay over twelve months is presumptively prejudicial, Judge Stenz focused on the record notwithstanding Maus's failure to identify the delays chargeable to the state. (Doc. 20-8 at 22.) Specifically, Judge Stenz noted the following delays:

---

[3]Footnote 2 of the *Flynn* decision explains the state court's approach to issues that have not been adequately briefed:

> We will not decide issues that are not, or inadequately, briefed. *See State v. Pettit*, 171 Wis. 2d 627, 646-647, 492 N.W.2d 633, 642 (Ct. App.1992) (appellate court may decline to address issues that are inadequately briefed; arguments that are not supported by legal authority will not be considered; *W.H. Pugh Coal Co. v. State*, 157 Wis. 2d 620, 634, 460 N.W.2d 787, 792 (Ct. App.1990) (an appellate court may decline to consider issue that is undeveloped in the briefs or that is not supported by citation to legal authority); *Reiman Assocs. v. R/A Advertising*, 102 Wis.2d 305, 306 n. 1, 306 N.W.2d 292, 294 n. 1 (Ct. App.1981) (issue raised but not briefed or argued is deemed to be abandoned); see also § 809.19(1)(e), Stats.

190 Wis. 2d at 39, n.2.

There were a number of motions which were filed throughout this time which required extensive hearing by the parties. In order to give Mr. Maus a fair trial, these issues had to be held some point. There were character evidence motions, requests for jury instructions and objectives to evidence, and motions to suppress statements, notice of alibi. There was also a writ of Habeas Corpus motion hearing held.

It appears that Mr. Rusch was initially involved. He withdrew or tried to withdraw on October of 2005. Finally, I believe he was allowed to withdraw November of 2005, and they appointed Mr. Hughes. I don't know what happened to Mr. Hughes. But then Mr. Gauer was appointed and accepted the case – does not accept the case and other attorneys were appointed throughout this case.

There was requirement for preparation of transcripts. There was also in June of 2006 relief to file a non-final order with the Court of Appeals. The appeal was filed in the Court of Appeals. But I believe they dismissed it shortly thereafter. There was habeas corpus proceeding motions filed to stay all proceedings. Mr. Maus had filed additional motions for appointment of counsel and removal of the case. A number of motions for stay of proceedings. I do see a renewal of a speedy trial motion in October of 2006 and a motion for removal of the court and the judge. There were in October of 2006, as the case was preparing for trial, objections to the jury instructions. November there was claim for ineffective assistance of counsel. November of 2006 there were motions to dismiss and request for different jury instruction as well as a motion to suppress statements. Responses to notice of all alibi.

...

I see that your bond was increased. The bond was increased back in early 2007. Additional filings by Mr. Maus for ineffective assistance fo counsel and a motion for the attorney to withdraw. A motion by the defendant to stay the proceedings. An again in April of 2007, a request for transcripts, scheduling orders, setting matters for trial, I believe.

In May of 2007, a further motion to withdraw from counsel. Also it appears that there was another appeal in 2007 to the Court of Appeals, which was resolved a number of months later. Then there was, apparently, a petition to the Supreme Court because couple of months later there was order from the Supreme Court in 2008, I believe in September or so, when I become involved in the case.

A number of other motions had not been decided, were refiled and had to be decided. I had to refamiliarize myself with the extensive happenings up

that point. Additional motions for attorney to withdraw, request for substitution of Judge, request for appointment of investigator. The number of motions were significant. And usually Mr. Maus would file each of these with very lengthy handwritten motions which required the Court to set a time to hear all of Mr. Maus's motions and prepared for trial.

...

And each time that he filed another set of motions it required the Court to review those and make sure that whether they were the same and give Mr. Maus the due process right to be heard with respect to those motions and number of appeals through the Court of Appeals and many requests and delay occasioned by the fact that each counsel appointed for Mr. Maus sought to withdrawal due to Mr. Maus's conduct.

So clearly, the delay, most of the delay and any prejudice was caused by the unavailability of counsel to adequately prepare and the result of the conduct by Mr. Maus himself.

I also find that there's really no significant prejudice to Mr. Maus by the delay. He suggests he lost a witness. His witnesses did not die. They just didn't have the information that Mr. Maus wanted. Some witnesses he could not find. That is not to be – it is not solely, if at all, related to the length of delay.

(Doc. 20-8 at 24-28.)

The Wisconsin Court of Appeals explained that the burden was on Maus to identify the various delays in the proceedings and explain which delays should be charged to the State. 2014 WI App 90, ¶ 16. Because Maus did not identify the delays attributable to the State, the Court of Appeals rejected the argument as inadequately developed. *Id.* Additionally, the Court of Appeals noted that much of the delays were attributable to Maus's repeated conflicts with counsel and his serial filings. *Id.* "The record reveals at least seven changes of counsel, and Maus submitted countless pro se filings while represented, including sixty-five filings from September 26, 2005, to April 12, 2006, alone." *Id.*

Maus's failure to develop the record or identify the delays chargeable to the state provides a basis for the state appellate court to reject his speedy trial violation claim. Moreover, the state court's determination that any delays were attributable to Maus's unauthorized motions, repeated conflicts, and serial filings is not an unreasonable application of clearly established case law. A petitioner's Sixth Amendment right to a speedy trial requires consideration of the length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972) . A review of the docket, transcripts, and Maus's own exhibits reveal that the delay was attributable to Maus, his filings, demeanor, attacks on counsel and the court, and pro se motions forcing the court to search for any basis in law or fact. Maus cites no prejudice, but rather maintains that the state waived this issue. For these reasons, ground thirteen is denied.

In ground fourteen Maus contends that the district attorney "illegally suppressed Faust's testimony the day of trial" so that Maus wouldn't have that testimony to show "how Mackenzie banged his head against the wall to make voices go away, how he seen things that weren't there." The argument appears to arise from the fact that the State did not call Faust as a witness during its case in chief. However, Larry and David Faust were listed as rebuttal witnesses to discredit Maus's alibi.

The Wisconsin Court of Appeals ruled that Maus cited no authority demonstrating that a prosecutor was required to call a rebuttal witness, and he was free to "subpoena and call the witnesses if he believed their testimony was necessary to his defense." 2014 WI App 90, ¶ 17. Indeed, the trial court addressed Maus's witness list on July 31, 2009, in advance of trial. The Fausts were not on the list of individuals that Maus requested be

subpoenaed.  (Doc. 54-5 at 9-14.)  Further, the government told Maus at the beginning of the trial that the Fausts would not be called at witnesses.  (Doc. 54-6 at 19.)  Citing no Federal law requiring a district attorney to subpoena and call the witness for Maus in his case in chief, this argument requires no further discussion.

In ground fifteen, Maus submits that a juror was biased during the trial and that the state waived or inadequately developed this issue. Private Investigator Susan B. Golding of Gold Investigations contacted one of the jurors on July 8, 2011, and prepared the following statement:

> On 07/08/11 at approximately 10:55 AM I made a telephone call to 715-623-3982.  A female answered the phone.  I asked her if she had received a message that I had called a few days earlier and she said yes.  I explained to her the reason why I was calling and that I wanted to schedule a time to meet with her to discuss the Brian Maus jury trial and to discuss if there were any hardships she or any of the other jurors had to endure.  Michelle said, "We had food and water, everything we needed."  Michelle went on to say that it was a two day trial and both days were long and the second day was especially long.  I asked what time the trial started each morning of the two day trial.  Michelle stated that she thought court started at 9:00 A.M. on both days.  Michelle said the first day of the trial went to 7:00 PM or 8:00 PM and the second day went to 2:00 AM.  Michelle stated that would have been her only issue.  Michelle said the second day was too long.  Michelle said he wanted to finish the case.  I asked her who "he" was and she said Brian.  Michelle said it was a joke that he represented himself.  Michelle said she never wants to do it again.  I asked her what she meant and Michelle said that she never wants to be on a jury again.  I asked her again if she would meet with me and she said she did not want to come in.  I explained to Michelle that I would come there and that I had several other jurors to interview in the Antigo area.  Michelle insisted that she did not want to meet with me.  I told Michelle that I could write it down as a refusal and she said, "Then do that."  I said OK and thanked Michelle for her time.

This statement was attached to Maus's brief in support of his petition, but was neither authenticated nor sworn under the penalty of perjury.  In any event, the Wisconsin Court of Appeals reviewed this statement as proffered by Maus and concluded that the juror's

comments did not demonstrate either subjective or objective bias. "The fact she believed Maus did a poor job representing himself does not demonstrate she based her verdicts on anything other than the facts in evidence." 2014 WI App 90, ¶ 19. Further, the conclusory argument was rejected as underdeveloped. *Id.* Notably, the jurors were asked before the trial whether they had any problem with being fair and impartial because Maus chose to represent himself, and no juror indicated that it would be an issue. (Doc. 54-6 at 69.) Having no other evidence to support his argument other than a statement made two years after the trial, the court finds that Maus has not established entitlement to habeas relief.

Ground sixteen is predicated on the notion that Maus was deprived of his right to attack Bennett's credibility by evidentiary rulings that prohibited him from questioning Bennetts about her alleged drug activity. Along the same lines, Maus asserts in ground seventeen that he was denied his right to attack Deputy Schunke's credibility by evidentiary rulings prohibiting him from asking the deputy about a drug investigation of Bennetts or how "Schunke threatened false statements out of the Fausts that Schunke drafted and forced the Fausts to sign."

| | |
|---|---|
| MR. MAUS: | Okay. Damn. Excuse me. I just had – Oh I got the right to get into Gerri Bennetts being a drug dealer even though she has been convicted of dope. I got the right to point to a jury that she was robbed because of drugs. |
| MR. UTTKE: | How is that relevant? |
| MR. MAUS: | Because she had 16,000 over $16,000, Judge. |
| THE COURT: | You can't get into that, Mr. Maus. Doesn't make a difference where she got the money from. That is a whole separate trial. And you can't impeach the character of the victim on collateral information such as |

that. And so that would be prohibited by the rules of evidence. And so even if she was convicted you don't know if that money came from that. And the criminal conviction only is going to be limited to those questions that Mr. Uttke will ask. So you can't really go into this character or other acts that they committed.

(Doc. 54-6 at 48-49.) At trial, Bennetts testified that she had five prior convictions. (Doc. 546-6 at 93.)

The Wisconsin Court of Appeals addressed Maus's arguments that the trial court improperly excluded evidence that the victim was involved in the drug trade, the stolen money was drug money, and a particular deputy had investigated the victim for dealing drugs. Citing authority that evidentiary rulings are reviewed for abuse of discretion and upheld if there is a rational basis for the circuit court's decision, the Court of Appeals affirmed the trial court's ruling. 2014 WI App 90, ¶ 18. The Court of Appeals reasoned that "(1) the money's source was irrelevant to whether Maus committed the crime of robbery, and (2) the court determined within its discretion that the drug evidence as highly prejudicial." *Id.* At the same time, the Court of Appeals observed that Maus's right to present a defense "does not include an absolute right to present any evidence that might damage the credibility of his accusers." *Id.* (citing *State v. St. George*, 2002 WI 50, ¶¶ 50-52).

To the extent that Maus framed the arguments as evidentiary issues, he did not present a cognizable federal claim in the state court. However, even if he had raised a proper Constitutional claim regarding his right to present a defense, the Wisconsin Court of Appeals decision was neither contrary to nor an unreasonable application of *Holmes v. South Carolina*, 547 U.S. 319 (2006), or its progeny.

20

As a final matter, Rule 11 of the Rules Governing Section 2254 Cases instructs the court to consider whether to grant a certificate of appealability. When a court dismisses a petition on procedural grounds, the determination of whether a certificate of appealability should issue has two components. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). First, the petitioner must show that reasonable jurists would find it debatable whether the court was correct in its procedural ruling. *Id.,* 529 U.S. at 484. If the petitioner meets that requirement, then he must show that reasonable jurists would find it debatable whether the petition states a valid claim for the denial of a constitutional right. *Id.* Because this court is unaware of any basis for concluding that jurists of reason would debate the correctness of this procedural ruling or otherwise find a reason to encourage Maus to proceed further, a certificate of appealability must be denied.

Now, therefore,

IT IS ORDERED that Brian Maus's petition for writ of habeas corpus is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 21st day of February, 2017.

BY THE COURT

s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
U.S. DISTRICT JUDGE